**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CENTER FOR RURAL AFFAIRS,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant*. | No. 26-894<br>Judge Lerner |

**DEFENDANT'S PARTIAL MOTION TO DISMISS**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

ALBERT S. IAROSSI
Assistant Director

MATTHEW D. LEWIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

**Table of Contents**

QUESTIONS PRESENTED ..................... 1

BACKGROUND ..................... 2

ARGUMENT ..................... 5

I. Legal Standard ..................... 5

II. Plaintiff Fails To Plead A Cognizable Breach Of The Duty Of Good Faith And Fair Dealing ..................... 7

a. Plaintiff's Claim For Breach Of The Duty Of Good Faith And Fair Dealing Fails To Identify A Specific Implied Promise That Was Undermined ..................... 7

b. Plaintiff's Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing Should Be Dismissed As Entirely Duplicative Of Its Claim For Breach Of The Express Terms Of The Contract ..................... 11

CONCLUSION ..................... 13

## Table of Authorities

**Cases** **Page(s)**

*Acceptance Ins. Cos., Inc. v. United States*,
583 F.3d 849 (Fed. Cir. 2009) .......... 5-6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*BGT Holdings LLC v. United States*,
984 F.3d 1003 (Fed. Cir. 2020) .......... 9, 11-12

*Bradley v. Chiron Corp.*,
136 F.3d 1317 (Fed. Cir. 1998) .......... 8

*Clean Team Janitorial Serv., Inc. v. United States*,
171 Fed. Cl. 1 (2024) .......... 6

*Dobyns v. United States*,
915 F.3d 733 (Fed. Cir. 2019) .......... *passim*

*Doe v. Indyke*,
457 F. Supp. 3d 278 (S.D.N.Y. 2020) .......... 6

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
97 F.4th 634 (9th Cir. 2024) .......... 6

*Metcalf Constr. Co. v. United States*,
742 F.3d 984 (Fed. Cir. 2014) .......... 4, 7

*Mutakaber v. Sec'y of State*,
162 F.4th 1141 (Fed. Cir. 2025) .......... 9

*Portland Mint v. United States*,
102 F.4th 1371 (Fed. Cir. 2024) .......... 11, 12, 13

*Precision Pine & Timber, Inc. v. United States*,
596 F.3d 817 (Fed. Cir. 2010) .......... 7, 8, 9

*Sanchez v. United States, No. 25-565C*,
2026 WL 248141 (Fed. Cl. Jan. 29, 2026) .......... 6

*Seneca Glob. Servs., LLC v. United States, No. 25-195C*,
2026 WL 2947660 (Fed. Cl. Sept. 30, 2026) .......... 9, 10

*Sommers Oil Co. v. United States*,
241 F.3d 1375 (Fed. Cir. 2001) .......... 6

*Spectre Corp. v. United States*,
178 Fed. Cl. 1 (2025) ........ 7, 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ........ 6

**Statutes**

42 U.S.C. § 7434 (repealed 2025) ........ 2, 3

**Rules**

Rule 12(b)(6) of the Rules of the Court of Federal Claims ........ 1

**Other**

2 C.F.R. § 200 ........ 3
2 C.F.R. § 200.340 ........ 3, 11
2 C.F.R. § 200.343 ........ 3, 11
2 C.F.R. § 200.344 ........ 3, 11
2 C.F.R. § 200.345 ........ 11

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CENTER FOR RURAL AFFAIRS,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant*. | No. 26-894<br>Judge Lerner |

**<u>DEFENDANT'S PARTIAL MOTION TO DISMISS</u>**

Pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC), defendant, the United States, moves to dismiss count II of the complaint filed by plaintiff, Center for Rural Affairs, for failure to state a claim upon which relief may be granted. Plaintiff's second count, alleging breach of the duty of good faith and fair dealing, should be dismissed because plaintiff fails to identify the requisite implied promise that defendant purportedly breached, and because plaintiff's second count impermissibly duplicates plaintiff's count I, breach of contract.

**QUESTIONS PRESENTED**

1. Whether plaintiff can establish a breach of the duty of good faith and fair dealing without identifying a specific implied contractual promise as required by Federal Circuit precedent.

2. Whether plaintiff can establish a breach of the duty of good faith and fair dealing where the allegations purporting a breach of this implied duty merely reiterate plaintiff's breach of contract claim.

## BACKGROUND

*Grant and Termination*

In 2022, Congress added Section 134 to the Clean Air Act, which appropriated $26.97 billion to the Environmental Protection Agency (EPA) Administrator for a "Greenhouse Gas Reduction Fund." 42 U.S.C. § 7434(a)-(c) (repealed 2025). Of that total, Congress appropriated $7 billion to EPA to make grants to states and other eligible recipients to carry out "greenhouse gas emission reduction activities, as determined appropriate by the Administrator." *Id.* § 7434(a)(1). Congress appropriated an additional $30 million to EPA "for the administrative costs necessary to carry out activities under this section." *Id.* § 7434(a)(4).

In 2023, EPA announced a funding opportunity, titled Solar for All, to implement Section 134(a)(1). Compl. ¶ 17. EPA described the funding opportunity as a means to "[a]chiev[e] the Biden-Harris Administration's" "climate and equity goals" and to "advance[] the Biden-Harris Administration's equity and environmental justice priorities as detailed in" (since rescinded) Executive Orders 14091 and 14008.[1] *See* Funding Opportunity No. EPA-R-HQ-SFA-23-01, available online at https://www.grants.gov/search-results-detail/348957 (last accessed on October 15, 2026); *see also id.* at 24 (anticipating awards "depending on Agency funding levels, the quality of applications received, agency priorities, and other applicable considerations."). EPA selected 60 grantees in April 2024 to receive Solar for All funding, including plaintiff, the Center for Rural Affairs.

On July 12, 2024, EPA issued the Notice of Award to plaintiff, containing the terms of the grant agreement. Appx1. These terms included references to the federal grant regulations at

[1] President Trump rescinded these Executive Orders, among others, on January 20, 2025. *See* https://www.whitehouse.gov/presidential-actions/2025/01/initial-rescissions-of-harmful-executive-orders-and-actions/.

2 C.F.R. § 200 *et seq.*, often referred to as the "uniform guidance" for federal grants and cooperative agreements. Specifically, the Notice of Award incorporated the termination provision of the uniform guidance, where "EPA maintain[ed] the right to terminate the assistance agreement only as specified in 2 CFR 200.340, through either a partial or full termination." Appx2.

The Notice of Award was unilaterally amended in modification number one on January 8, 2025, shortly before the change in administration. Appx3. Page 37 of the new Notice of Award modified the termination provisions, adding new language to the termination conditions, while still incorporating termination provisions from 2 C.F.R. § 200.340. Appx4.

Through the enactment of the One Big Beautiful Bill Act on July 4, 2025, Congress amended Section 134 of the Clean Air Act, withdrawing administrative funding and functionally precluding future grant awards under the Solar for All program. On August 7, 2025, the EPA determined that the Solar for All program should be terminated. Appx5.

The EPA Office of Mission Support issued a termination notice to Brian Depew, Executive Director of the Center for Rural Affairs on August 7, 2025. Appx5. The termination notice, "recogniz[ing] that program participants may have begun to rely on funds made available through the Solar for All program and have in some instances made preliminary budgets, projections, outlays, and staffing decisions[,]" informed plaintiff that it should "expect any harms to interests suffered to be remedied and remediable by the close out processes outlined in the program grants[.]" *Id.* EPA accordingly advised plaintiff to submit closeout costs under the incorporated uniform grant guidance. *Id.* (citing 2 C.F.R. § 200.344).

*Complaint*

On June 16, 2026, plaintiff filed its complaint seeking an unspecified amount of money as a result of the grant termination. Plaintiff brings two counts: first, plaintiff argues in count I that the termination of plaintiff's agreement was a breach of contract because it violated express provisions of the grant; second, plaintiff argues that United States breached the implied duty of good faith and fair dealing when it "unilaterally and unreasonably issued the Termination Memorandum terminating the Grant Agreement[,]" *i.e.*, that the termination was a breach of the duty of good faith and fair dealing. Complaint ¶ 102.

In count I, plaintiff identifies specific language that was purportedly breached by the Government's termination. Plaintiff claims that "Section 5 of the Grant Agreement (Termination) provided the sole basis for the EPA to terminate the Grant Agreement." Compl. ¶ 87 (citing to the amended Notice of Award). Thus plaintiff argues that the breach of the agreement was a violation of the express duties arising out of Section 5 of the agreement. Or as plaintiff articulated, "[t]he EPA's unilateral termination through the Termination Memorandum breached the express terms of the Grant Agreement because the termination provision of the Grant Agreement did not permit the EPA to issue a termination based on the [One Big Beautiful Bill Act]." Compl. ¶ 91.

Plaintiff's count II claim alleging breach of the implied duty of good faith and fair dealing is less clear. Plaintiff begins by iterating general legal standards for breach of the duty of good faith and fair dealing. *See* ¶ 95 (quoting *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014)), for the proposition that every contract imposes the implied duty of good faith and fair dealing, and *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019), for

the general standard that a party should not act as to destroy the reasonable expectations of the other party) (additional citations omitted)).

However, plaintiff's complaint does not identify any specific implied duty that was breached by the termination. At ¶ 101 of the complaint, plaintiff reiterates the legal standard that the EPA was required to "act in good faith and not unreasonably interfere with the Center's ability to realize the benefits to be derived therefrom." In the next paragraph, plaintiff argues that the EPA breached the implied duty of good faith and fair dealing by terminating the agreement. Finally, plaintiff states that the termination itself interfered with plaintiff's performance and destroyed plaintiff's reasonable expectations. *Id.* at ¶ 103. These three paragraphs, however, do not articulate any underlying facts or implied promise to support such a claim. Plaintiff improperly pleads its claim for breach of the duty of good faith and fair dealing as simply a backup argument for the same allegations in count I, breach of contract.

## ARGUMENT

Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed under RCFC 12(b)(6) because plaintiff fails to state a claim upon which relief may be granted. Plaintiff fails to plead the required elements of a claim for breach of the implied duty of good faith and fair dealing, namely, plaintiff fails to identify any implied promise under the agreement. Plaintiff's claim instead challenges the express language of the grant agreement, impermissibly duplicating its breach of contract claim.

### I. Legal Standard

Under RCFC 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief could be granted" unless it alleges facts "'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*,

583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). When reviewing a motion to dismiss for failure to state a claim, the Court may consider both the pleadings as filed and the documents attached to a pleading directly or by reference. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

In assessing the allegations in the complaint, the Court "must accept as true all the factual allegations, and . . . indulge all reasonable inferences in favor of the non-movant[.]" *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). But the Court is not required to accept legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And a plaintiff's "nonconclusory factual allegations" must " set[] forth a plausible—as opposed to merely a conceivable—claim for relief." *Clean Team Janitorial Serv., Inc. v. United States*, 171 Fed. Cl. 1, 8 (2024) (citing *Ashcroft*, 556 U.S. at 680). Simply put, "'the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action[.]'" *Sanchez v. United States*, No. 25-565C, 2026 WL 248141, at *6 (Fed. Cl. Jan. 29, 2026) (alterations in original) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–36 (3d ed. 2004)). "A claim will only have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Indyke*, 457 F. Supp. 3d 278, 281 (S.D.N.Y. 2020) (quoting *Ashcroft*, 556 U.S. at 678); *see also In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (holding that a plaintiff's allegations can be dismissed for failure to plead sufficient facts to support a cognizable legal theory).

## II. Plaintiff Fails To Plead A Cognizable Breach Of The Duty Of Good Faith And Fair Dealing

Pursuant to RCFC 12(b)(6), the Court should dismiss plaintiff's count II for failure to state a cognizable claim for breach of the duty of good faith and fair dealing because plaintiff fails to plead the requisite elements of the claim. Instead, to the extent that plaintiff pleads a breach of the duty of good faith and fair dealing, it merely reiterates its breach of contract claim through a redundant second count, which is not permissible.

### a. Plaintiff's Claim For Breach Of The Duty Of Good Faith And Fair Dealing Fails To Identify A Specific Implied Promise That Was Undermined

The Court should dismiss plaintiff's claim for breach of the duty of good faith and fair dealing because plaintiff fails to articulate any specific implied promise breached by the United States. Plaintiff instead presents a second challenge to the United States' termination rights under the grant, which is an express provision that governs the dispute, not an implied promise.

Every contract "imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement." *Dobyns*, 915 F.3d at 739 (Fed. Cir. 2019) (citing *Metcalf*, 742 F.3d at 990). To establish a breach of the duty of good faith and fair dealing, a party must identify a "specific promise" that was undermined. *Spectre Corp. v. United States*, 178 Fed. Cl. 1, 23 (2025) (citing *Dobyns v. United States*, 915 F.3d at 739). The implied duty created by this specific promise "cannot expand a party's contractual duties beyond those in the express contract[.]" *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). Nor can an implied promise create duties that are inconsistent with the express obligations. *Id.*

The Federal Circuit has homed in on the need for a plaintiff to identify an implied promise under the contract. "Although the implied duty of good faith an d fair dealing attaches to every contract, *what* that duty entails depends in part on what that contract promises (or disclaims). Accordingly, we examine what the contracts say and the circumstances of this case."

*Precision Pine*, 596 F.3d at 830 (citing *Hercules, Inc. v. United States,* 516 U.S. 417, 433 (1996) for the proposition that a party asserting an implied obligation has the onus to set forth the implied agreement) (emphasis in original). In *Precision Pine*, the Federal Circuit considered whether the United States breached an implied duty of uninterrupted contract performance for a timber contract. The Federal Circuit found that there was express language in the contract (CT 6.01 and CT 6.25) that addressed Precision Pine's timber logging rights in the circumstances under dispute, and accordingly the Court held that the plaintiff could not impose implied duties inconsistent with those express provisions to create a duty that the parties did not contemplate. *Id.* at 830-31.

The Federal Circuit in *Dobyns* subsequently and more directly distinguished the need to establish implied promises: "*a specific promise must be undermined* for the implied duty [of good faith and fair dealing] to be violated." *Dobyns*, 915 F.3d at 739 (emphasis added). "[I]mplied covenants of good faith and fair dealing are limited to assuring compliance with the express terms of the contract and can not be extended to create obligations not contemplated in the contract." *Id. (quoting Bradley v. Chiron Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998). The *Dobyns* Court considered whether a settlement agreement with an ex-undercover agent was violated where the undercover agent alleged that the United States violated purported duties to provide security to Mr. Dobyns and discriminated against him. *Dobyns*, 915 F.3d at 736. In reviewing the allegations, the Federal Circuit overturned the trial court's finding of a breach of the duty of good faith and fair dealing because the trial court failed to "ground[] the supposed duties in the specific provisions of the contract[,]" but instead imposed new duties upon the United States. *Id.* at 740.

Thus, across these two seminal cases, the Federal Circuit tethered the implied duty of good faith and fair dealing to the rights and obligations under an agreement. That implied promise cannot be used to circumvent express language in an agreement that addresses the dispute, *see Precision Pine*, 596 F.3d at 830-31, nor can it be used to imply new obligations not contemplated by a contract, *see Dobyns*, 915 F.3d at 739-740. *See also BGT Holdings LLC v. United States*, 984 F.3d 1003, 1016 (Fed. Cir. 2020) (appellant "cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits.") (citing *Precision Pine*, 596 F.3d at 831); *Mutakaber v. Sec'y of State*, 162 F.4th 1141, 1149 (Fed. Cir. 2025). Instead, for a plaintiff to plausibly allege a claim for a breach of the duty of good faith and fair dealing, a plaintiff must specify an implied promise under the agreement. *See Dobyns*, 915 F.3d at 739; *Spectre*, 178 Fed. Cl. at 23.

Within the past month, this Court has similarly dismissed a claim for breach of the duty of good faith and fair dealing where a plaintiff could not sufficiently identify an implied promise. *See Seneca Glob. Servs., LLC v. United States*, No. 25-195C, 2026 WL 2947660, at *41-42 (Fed. Cl. Sept. 30, 2026). In that case, the plaintiff asserted that the Government's failure to exercise option years in a contract amounted to a breach of the duty of good faith and fair dealing. In rejecting plaintiff's claim at the motion to dismiss stage, the Court, with considerable detail and discussion of the relevant precedent, held that the plaintiff could not establish a breach of the duty of good faith and fair dealing claim where the plaintiff's dispute centered around express language in the contract. *Id.* at *36-42. Because the contract contained language addressing option periods, the plaintiff could not use a claim for breach of the duty of good faith and fair dealing as a mechanism to avoid the express language of the agreement.

Plaintiff's count II, for breach of the implied duty of good faith and fair dealing, simply fails to plead a specific promise implied by the agreement. Of the 12 paragraphs in count II, the first 8 paragraphs do no more than reiterate the basic background of the grant and the general legal standards for breach of the duty of good faith and fair dealing. *See* Compl. ¶¶ 93-100. It is not until paragraph 101 that plaintiff alleges any implied duty. *Id.* at ¶ 101 ("The Center entered into the Grant Agreement with the EPA with the reasonable expectation that the EPA would act in good faith and not unreasonably interfere with the Center's ability to realize the benefits to be derived therefrom"). But this paragraph simply reiterates the basic legal standard for a claim for breach of the duty of good faith and fair dealing. *Compare Dobyns*, 915 F.3d 739 ("A party breaches the contract when it fails to abide by this implied duty, which includes 'the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'") (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). The paragraph does not identify what EPA did to interfere with performance or what specific expectations were implied by the grant. *See also* ¶¶ 103-104. Plaintiff instead improperly asks the Court to accept the legal conclusion couched as factual allegations. *See Ashcroft*, 556 U.S. at 678 (citation omitted).

Plaintiff's claim for breach of the duty of good faith and fair dealing otherwise entirely rests upon the allegations in a single paragraph of the complaint. *See* Compl. ¶ 102. In full:

> The EPA breached the implied duty of good faith and fair dealing when it unilaterally and unreasonably *issued the Termination Memorandum terminating the Grant Agreement* based on an improper interpretation of the OBBBA, directed the Center to stop work under the Grant Agreement, suspended and curtailed the Center's ability to draw obligated Solar for All funds through the ASAP portal, and impaired the Center's ability to carry out the bargained for objectives of the Nebraska Solar for All program.

*Id.* (emphasis added). That is, plaintiff's claim for breach of the duty of good faith and fair dealing starts with the decision to terminate the grant—in other words, the breach of contract

claim. Then, plaintiff summarily objects to the direction to stop work under the agreement and plaintiff's inability to use grant funds following the termination.

Plaintiff's assertions in paragraph 102 that it was directed to stop work and barred from incurring new costs are not distinct from the challenge to the termination, but instead the effects of termination that inevitably follow from the termination itself. *See* 2 C.F.R. § 200.340(d) ("When the Federal award is terminated in part or its entirety, the Federal agency or pass-through entity and recipient or subrecipient remain responsible for compliance with the requirements in §§ 200.344 and 200.345."); § 344 (describing 120-day closeout process); *see also id.* at § 343 ("Costs to the recipient or subrecipient resulting from financial obligations incurred . . . after the termination of a Federal award are not allowable"). Plaintiff's complaint makes clear that the core of plaintiff's challenge is the termination of its grant, which is expressly addressed by the termination language contained in the grant agreement, and thus not an implied promise.

Accordingly, plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed where plaintiff fails to plead an implied promise that was breached.

**b. Plaintiff's Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing Should Be Dismissed As Entirely Duplicative Of Its Claim For Breach Of The Express Terms Of The Contract**

Similarly, plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed because it duplicates plaintiff's claim of a breach of contract, arguing the same ultimate legal question through a separate count that is superseded by the express contract language.

Where a "breach of contract claim and the breach of the implied covenant of good faith and fair dealing claim are based on the same facts, the latter claim should be dismissed as redundant." *Portland Mint v. United States*, 102 F.4th 1371, 1384 (Fed. Cir. 2024); *see also*

*BGT Holdings LLC v. United States*, 984 F.3d 1003, 1016-17 (Fed. Cir. 2020) (holding that the duty of good faith and fair dealing is "preempt[ed]" when the contract provides the mechanism for a plaintiff's dispute). Accordingly, in *Portland Mint* the Federal Circuit has recently issued binding precedent requiring that a plaintiff's claim for breach of the duty of good faith and fair dealing be dismissed where it coincides with a plaintiff's breach of contract claim. *Portland Mint*, 102 F.4th at 1384.

The underlying complaint in *Portland Mint* presented similar breach of the duty of good faith and fair dealing allegations to those asserted here. The plaintiff first pled a claim for breach of an agreement in its complaint. *See Portland Mint v. United States*, No. 20-518, ECF No. 54, Second Am. Compl. at 21-22; *compare* Compl. at 17-19 (identifying the termination language in the grant agreement in this dispute, and arguing that this specific language was breached). By comparison, rather than setting forth any distinct implied promises under the agreement, the plaintiff in *Portland Mint* reiterated the legal standard for the duty of good faith and fair dealing, before then concluding that the Government had breached "reasonable expectations of the fruits of the contract[.]" *Portland Mint*, Second Am. Compl. at 22-23; *compare* Compl. at 103 (concluding that the termination "destroyed the Center's reasonable expectations regarding the benefits to be derived from its performance of the Grant Agreement."). Neither plaintiff identified any distinct "reasonable expectations" that were impeded that were not addressed in the previous claim for breach of the agreements. Much like in this case, the dispute in *Portland Mint* was really about whether or not the Government complied with the agreement itself.

Just as the Court should do here, the Court dismissed plaintiff's claim in *Portland Mint* following a RCFC 12(b)(6) motion for bringing the same dispute and merely re-labelling the legal theory as a breach of an implied duty. The Federal Circuit on appeal determined that the

Court's dismissal of this duplicative claim at the motion to dismiss stage was legally sound, and in doing so created binding precedent that the Court cannot entertain duplicative claims for breach of the duty of good faith and fair dealing. *Portland Mint*, 102 F.4th at 1384.

Practically, the duplicative nature of plaintiff's breach of contract and breach of the duty of good faith and fair dealing arguments is demonstrated by the analysis that would be required in order to find that EPA breached the duty of good faith and fair dealing, according to plaintiff's theory. To assess whether there was a breach of the implied duty of good faith and fair dealing, the Court would necessarily need to review and interpret the termination language contained within the grant agreement. In doing so, the Court would be required to assess the express language of the grant, thus performing the same analysis that would be performed in order to decide plaintiff's breach of contract allegation. Put differently, the Court could not analyze plaintiff's claim for breach of the implied duty of good faith and fair dealing without interpreting the express termination provisions of the grant agreement in the same manner as would be done to decide the breach of contract allegation.

At bottom, the Court should dismiss plaintiff's second count purporting breach of the implied duty of good faith and fair dealing. Plaintiff fails to identify a specific implied promise as required under Federal Circuit precedent, and the reason that plaintiff does not identify a distinct implied promise is clear—plaintiff re-challenges the express termination promises in the grant agreement, improperly duplicating its count I breach of contract claim.

**CONCLUSION**

For these reasons and for good cause shown, we respectfully request that the Court dismiss the second count in plaintiff's complaint, alleging breach of the duty of good faith and fair dealing.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

ALBERT S. IAROSSI
Assistant Director

/s/ Matthew D. Lewis

MATTHEW D. LEWIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 880-6321
Attorneys for Defendant

Dated: October 15, 2026

## INDEX TO THE APPENDIX

*Excerpt of Notice of Award*, July 17, 2024 .......... Appx1
*Excerpt of Modification 1 to Notice of Award*, January 8, 2025 .......... Appx3
*Termination of EPA Assistance Agreement*, August 7, 2025 .......... Appx5

# U.S. ENVIRONMENTAL PROTECTION AGENCY

## Grant Agreement

| | |
|---|---|
| **GRANT NUMBER (FAIN):** 84092101<br>**MODIFICATION NUMBER:** 0<br>**PROGRAM CODE:** 5H | **DATE OF AWARD**<br>07/12/2024 |
| **TYPE OF ACTION:**<br>New | **MAILING DATE**<br>07/17/2024 |
| **PAYMENT METHOD:**<br>ASAP | **ACH#**<br>77529 |

| | |
|---|---|
| **RECIPIENT TYPE:**<br>Not for Profit | **Send Payment Request to:**<br>Contact EPA RTPFC at: rtpfc-grants@epa.gov |
| **RECIPIENT:**<br>CENTER FOR RURAL AFFAIRS<br>145 Main Street<br>PO Box 136<br>Lyons, NE 68038-0136<br>**EIN:** 47-0553823 | **PAYEE:**<br>CENTER FOR RURAL AFFAIRS<br>145 Main Street, P.O. Box 136<br>Lyons, NE 68038-0136 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Brian Depew<br>145 Main Street<br>P.O. BOX 136<br>LYONS, NE 68038-0136<br>**Email:** briand@cfra.org<br>**Phone:** 402-687-2100 | Rebecca Taylor<br>1201 Constitution Ave NW, 1101R<br>Washington, DC 20004<br>**Email:** Taylor.Rebecca@epa.gov<br>**Phone:** 202-564-5211 | Caitlyn Chandler<br>OGD-GMBOD, 3903R<br>1200 Pennsylvania Ave NW<br>Washington, DC 20460<br>**Email:** Chandler.Caitlyn@epa.gov<br>**Phone:** 202-564-0592 |

**PROJECT TITLE AND DESCRIPTION**

Nebraska Solar for All - "Note: A special payment condition applies to this award."

See Attachment 1 for project description.

| BUDGET PERIOD | PROJECT PERIOD | TOTAL BUDGET PERIOD COST | TOTAL PROJECT PERIOD COST |
|---|---|---|---|
| 05/01/2024 - 04/30/2029 | 05/01/2024 - 04/30/2029 | $ 0.00 | $ 0.00 |

## NOTICE OF AWARD

Based on your Application dated 10/11/2023 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 62,450,000.00. EPA agrees to cost-share 0.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 62,450,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| Environmental Protection Agency, Grants Management Division<br>1200 Pennsylvania Ave, NW Mail code 3901M<br>Washington, DC 20460 | Environmental Protection Agency, OGGRF<br>OA - Office of the Administrator<br>1200 Pennsylvania Ave, NW Mail code 3901M<br>Washington, DC 20460 |

**THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY**

| | |
|---|---|
| **Digital signature applied by EPA Award Official** Barbara Proctor - Associate Award Official | **DATE**<br>07/12/2024 |

down" to subrecipients, with the recipient required to assess whether each subrecipient is making sufficient progress in implementing the EPA-approved Solar for All Workplan under its subaward agreement; the recipient may increase the frequency and scope of the review of sufficient progress of subrecipients, in accordance with 2 CFR 200.332 *Requirements for Pass-Through Entities.*

If the EPA Project Officer determines that the recipient has not made sufficient progress in implementing its EPA-approved Solar for All Workplan, the recipient, if directed to do so, must implement a corrective action plan concurred on by the EPA Project Officer and approved by the Award Official or Grants Management Officer pursuant to 2 CFR 200.208.

## 6. Termination

EPA maintains the right to terminate the assistance agreement only as specified in 2 CFR 200.340, through either a partial or full termination. If EPA partially or fully terminates the assistance agreement, EPA must (1) deobligate uncommitted funds and reobligate them to another entity to effectuate the objectives of Section 134 of the Clean Air Act, 42 USC § 7434 within 90 days of the deobligation and (2) amend the recipient's assistance agreement to reflect the reduced amount, based on the deobligation. In accordance with 2 CFR 200.341, EPA must provide the recipient notice of termination.

## T. Period of Performance

The period of performance under this award agreement will start on the date specified in the budget period and project period of the "Notice of Award" for this assistance agreement and end no later than five years from that date. However, the period of performance may end prior to five years from the end date specified in the budget period and project period of the "Notice of Award" if (1) the recipient has disbursed the entire award amount and (2) the EPA Project Officer has advised the EPA Award Official that all required work of the Federal award have been completed, in accordance with 2 CFR 200.344. EPA will not consider all required work to have been completed until the entire award amount (or its equivalent) has been used for allowable activities. In accordance with 2 CFR 200.344(b), the recipient agrees to liquidate all financial obligations incurred under the award no later than 120 calendar days after the end date of the period of performance.

The recipient should note that the recipient will not be considered to have used the entire award amount so long as any subrecipient has not met the requirements for closeout under 2 CFR 200.344.

## U. Closeout Agreement

As provided at 2 CFR 200.307(f) and 2 CFR 1500.8(c), after the end of the period of performance of the assistance agreement, the recipient may keep and use program income at the end of the assistance agreement (retained program income) and use program income earned after the assistance agreement period of performance (post-closeout program income) in accordance with this term and condition. When used in this Closeout Agreement, the term "program income" includes both retained program income and post-closeout program income. The closeout agreement goes into effect for this assistance agreement the day after the assistance agreement period of performance ends, unless otherwise designated by the EPA Grants Management Officer or Award Official.

Prior to the effective date of the Closeout Agreement, the recipient agrees to submit a post-closeout program strategy, covering the use of program income retained and earned by the recipient and its subrecipients. This program strategy will become a condition of the Closeout Agreement, once the

| | | | |
|---|---|---|---|
| | **U.S. ENVIRONMENTAL PROTECTION AGENCY**<br>**Assistance Amendment** | **GRANT NUMBER (FAIN):** 84092101<br>**MODIFICATION NUMBER:** 1<br>**PROGRAM CODE:** 5H | **DATE OF AWARD**<br>01/08/2025 |
| | | **TYPE OF ACTION:**<br>No Cost Amendment | **MAILING DATE**<br>01/08/2025 |
| | | **PAYMENT METHOD:**<br>ASAP | **ACH#**<br>77529 |

| | |
|---|---|
| **RECIPIENT TYPE:**<br>Not for Profit | **Send Payment Request to:**<br>Contact EPA RTPFC at: rtpfc-grants@epa.gov |
| **RECIPIENT:** | **PAYEE:** |
| CENTER FOR RURAL AFFAIRS<br>PO Box 136<br>Lyons, NE 68038-0136<br>**EIN:** 47-0553823 | CENTER FOR RURAL AFFAIRS<br>145 Main Street, P.O. Box 136<br>Lyons, NE 68038-0136 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Brian Depew<br>145 Main Street P.O. Box 136<br>Lyons, NE 68038-0136<br>**Email:** briand@cfra.org<br>**Phone:** 402-687-2100 | April Nowak<br>1595 Wynkoop Street, MSD<br>Denver, CO 80202<br>**Email:** Nowak.April@epa.gov<br>**Phone:** 303-312-6181 | Zachary Lane<br>1200 Pennsylvania Ave NW<br>Washington, DC 20460<br>**Email:** Lane.Zachary@epa.gov<br>**Phone:** 202-564-3397 |

**PROJECT TITLE AND EXPLANATION OF CHANGES**

Nebraska Solar for All

This amendment removes the 2% funding restriction from the Solar for All award and incorporates the necessary budget and workplan documentation.

| BUDGET PERIOD | PROJECT PERIOD | TOTAL BUDGET PERIOD COST | TOTAL PROJECT PERIOD COST |
|---|---|---|---|
| 05/01/2024 - 04/30/2029 | 05/01/2024 - 04/30/2029 | $ 62,450,000.00 | $ 62,450,000.00 |

## NOTICE OF AWARD

Based on your Application dated 10/11/2023 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 0.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 62,450,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| Environmental Protection Agency, Grants Management Division<br>1200 Pennsylvania Ave, NW Mail code 3901M<br>Washington, DC 20460 | Environmental Protection Agency, OGGRF<br>OA - Office of the Administrator<br>1200 Pennsylvania Ave, NW Mail code 3901M<br>Washington, DC 20460 |

**THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY**

| | |
|---|---|
| **Digital signature applied by EPA Award Official** Keva R. Lloyd - Associate Award Official | **DATE**<br>01/08/2025 |

## 5. Termination

EPA maintains the right to terminate the Assistance Agreement only as specified in 2 CFR 200.339 and the version of 2 CFR 200.340 effective as of October 1, 2024, when the noncompliance with the terms and conditions is substantial such that effective performance of the Assistance Agreement is Materially Impaired or there is adequate evidence of Waste, Fraud, or Abuse, or material misrepresentation of eligibility status, prompting adverse action by EPA per 2 CFR 200.339, through either a partial or full termination. If EPA partially or fully terminates the Assistance Agreement, EPA must (1) de-obligate uncommitted funds and re-obligate them to another Eligible Recipient selected under Funding Opportunity Number 66.959 (Zero Emissions Technologies Grant Program, also known as Solar For All) to effectuate the objectives of Section 134 of the Clean Air Act, 42 USC § 7434 within 90 days of the de-obligation and (2) amend the Recipient's Assistance Agreement to reflect the reduced amount, based on the de-obligation. In accordance with 2 CFR 200.341, EPA will provide the Recipient notice of termination. If an Eligible Recipient has assumed a legal obligation properly incurred for an allowable activity entered into by a suspended or terminated Recipient, EPA will re-obligate funds to the Eligible Recipient to satisfy the legal obligation and accept an amended workplan and budget to that effect.

## R. Period of Performance

The Period of Performance under this Award Agreement will end on the date specified in the Notice of Award. However, the Period of Performance may end prior to the date specified in the Notice of Award if all required work of the Federal award has been completed, in accordance with 2 CFR 200.344. In accordance with 2 CFR 200.344(b), the Recipient agrees to liquidate all financial obligations incurred under the award no later than 120 calendar days after the end date of the Period of Performance. In this context, to “liquidate all financial obligations” means to pay outstanding bills, such as the payment of staff salaries accrued during the Period of Performance but for which the due date falls after the end date of the Period of Performance. To “liquidate all financial obligations” does not mean to liquidate, terminate, or accelerate outstanding obligations related to the provision of Financial Assistance to Qualified Projects at the end of the Period of Performance, which would continue to be subject to the Closeout Agreement.

The Recipient should note that the Recipient will not be considered to have met the requirements for closeout under its award under 2 CFR 200.344 so long as any Subrecipient has not met the requirements for closeout under its subaward under 2 CFR 200.344.

Notwithstanding the Extension of Project/Budget Period Expiration Date General Term and Condition, in accordance with 2 CFR 200.308(g)(2), the Recipient is authorized to initiate a one-time extension of the Period of Performance by up to 12 months without prior EPA approval, provided that the extension complies with the requirements 2 CFR 200.308(g)(2). In accordance with 2 CFR 200.308(g)(2), the Recipient must “notify the Federal agency in writing with the supporting justification and a revised period of performance at least 10 calendar days before the conclusion of the period of performance.”

## S. Closeout Agreement

As provided at 2 CFR 200.307(c) and 2 CFR 1500.8(d), after the end of the Period of Performance of the Assistance Agreement, the Recipient may keep and use Program Income remaining at the end of the Assistance Agreement and use Post-Closeout Program Income in accordance with this term and condition. The Closeout Agreement goes into effect for this Assistance Agreement the earlier of 1) the day after the Assistance Agreement Period of Performance ends, 2) the first date when all required work of the Federal award has been completed in accordance with 2 CFR 200.344 and the Recipient has met

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

OFFICE OF MISSION SUPPORT
WASHINGTON, D.C. 20460

August 7, 2025

**MEMORANDUM**

**SUBJECT:** Termination of EPA Assistance Agreement 5H-84092101 under 2 CFR 200.340

**FROM:** Devon Brown, EPA Award Official

**TO:** Brian Depew, Executive Director
Center For Rural Affairs

The purpose of this communication is to notify you that, pursuant to the One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21 (July 4, 2025), the U.S. Environmental Protection Agency (EPA) is hereby terminating Assistance Agreement No. 5H-84092101 awarded to Center For Rural Affairs. Section 60002 of OBBBA repeals the underlying authority for the Solar for All program at Section 134 of the Clean Air Act, 42 U.S.C. 7434, and rescinds unobligated amounts to carry out Section 134. The repeal of the grant appropriations in CAA 134(a)(1)-(3), coupled with the rescission of the administrative appropriation in section 134(a)(4), effectively and completely terminated the statutory authority and all appropriations related to Solar for All. As both the grant appropriations and the EPA's administrative cost appropriation are rescinded, the Agency no longer possesses either the substantive legal authority or the financial appropriations needed to continue implementation, oversight or monitoring for waste, fraud, or abuse of these grants or of Solar for All. Thus, any attempt to continue the program's administration, in the absence of any authorizing legislation or appropriated funds for that purpose, is no longer legally permissible. The EPA has been weighing options for the future of the Solar for All program and has made the decision to terminate the SFA program and existing grants because the EPA no longer has a statutory basis or dedicated funding to continue administering and overseeing the nearly $7 billion outlay to approximately 60 grant recipients. Congress has made its intent clear—via a repeal of the statutory authorization and all appropriated funding for the program and the administrative burdens of implementing and overseeing the program—that the SFA program is no longer to operate.

The EPA recognizes that program participants may have begun to rely on funds made available through the Solar for All program and have in some instances made preliminary budgets, projections, outlays, and staffing decisions. Due to the early nature of such expenditures, we expect any harms to interests suffered to be remedied and remediable by the close out processes outlined in the program grants and discussed below.

The process for closeout is generally outlined in 2 CFR 200.344. EPA is clarifying what reports are required and what reports are waived below. Other requirements are still in effect if applicable to your grant.

EPA is requiring the following closeout reports due within 120 days of closeout (2 CFR 200.344a:)

- Final Federal Financial Report, SF-425
- Final Technical Report
- Other programmatic reports identified in your terms and conditions

As part of this termination, EPA is waiving the following closeout reports:

- Property Report, SF-428
- Final Minority Business Enterprise/Woman Business Enterprise Utilization Under Federal Grants and Cooperative Agreements, EPA Form 5700-52A

The recipient may request payment from the Automated Standard Application Payments (ASAP) system for allowable costs incurred up to the date of this memo provided that such costs were contained in the approved workplan. Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g).

Also, per 2 CFR 200.472, a recipient may use grant funds to properly closeout their grant including reasonable and necessary costs that might occur after the date of this memo. If the recipient drew down funds from ASAP for costs beyond the termination date or for costs that exceed the amount necessary to properly closeout their grant, the recipient must contact RTPFC at rtpfc-grants@epa.gov for instructions on how to return the excess funds.

The EPA Grants Management Office will issue an amendment to the agreement to document the termination.

If you wish to dispute this termination decision, the Disputes Decision Official (DDO), molina.michael@epa.gov, must receive the Dispute no later than 30 calendar days from the date this termination notice is electronically sent to you. Disputes must be sent electronically by email to the DDO, with a copy to the EPA Award Official, brown.devon@epa.gov within the 30-day period stated above. The Dispute submitted to the DDO must include: (1) A copy of the disputed Agency Decision; (2) A detailed statement of the specific legal and factual grounds for the Dispute, including copies of any supporting documents; (3) The specific remedy or relief you seek under the Dispute; and (4) The name and contact information, including email address, of your designated point of contact for the Dispute. *See* 2 CFR 1500.15

The requirements on post-closeout adjustments and continuing responsibilities, including audit and record retention requirements, at 2 CFR 200.345 remain in effect.

cc: Zachary Lane, EPA Grant Specialist
April Nowak, EPA Project Officer
Brian Depew, Grantee Program Manager